1  KILPATRICK TOWNSEND & STOCKTON LLP
   STEVEN D. MOORE (State Bar No. 290875)
2  smoore@kilpatricktownsend.com
   TAYLOR J. PFINGST (State Bar No. 316516)
3  tpfingst@kilpatricktownsend.com
   Two Embarcadero Center, Suite 1900
4  San Francisco, CA  94111
   Telephone:   415 576 0200
5  Facsimile:   415 576 0300

6  SCOTT E. KOLASSA (State Bar No. 294732)
   skolassa@kilpatricktownsend.com
7  WILLIAM E. MOSLEY (State Bar No. 280495)
   wmosley@kilpatricktownsend.com
8  NORRIS P. BOOTHE (State Bar No. 307702)
   nboothe@kilpatricktownsend.com
9  1080 Marsh Road
   Menlo Park, CA  94025
10 Telephone:   650 326 2400
   Facsimile:    650 326 2422

11
   Attorneys for Defendant
12 GREE, INC.

13              **UNITED STATES DISTRICT COURT**

14           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17  SUPERCELL OY,                        Civil Action No. 3:19-CV-01106-JD

18              Plaintiff,               **DEFENDANT GREE, INC.'S NOTICE OF**
                                         **MOTION AND MOTION TO DISMISS,**
19       v.                              **TRANSFER, OR STAY**

20  GREE, INC.,                          Date:  July 11, 2019
                                         Time:  10:00 a.m.
21              Defendant.               Room:  11
                                         Judge:  Hon. James Donato
22
                                         Complaint filed February 28, 2019
23

24

25      **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

26

27

28

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on July 11, 2019 at 10:00 a.m., or as soon thereafter as it

3    may be heard, in Courtroom 11, before the Honorable James Donato, Defendant GREE, Inc.

4    ("GREE") shall and hereby does move for an order dismissing, transferring, or staying this action.

5        The grounds for this Motion are (1) Plaintiff Supercell Oy's ("Supercell") failure to

6    properly serve GREE, (2) the first-to-file rule, (3) a lack of declaratory judgment jurisdiction over

7    certain of Supercell's claims, (4) lack of subject matter jurisdiction over Supercell's contract

8    claims, (5) Supercell's failure to properly plead a claim for breach of contract, and (6) the

9    automatic stay provision of 35 U.S.C. § 325(a)(2).

10       The Motion is based on this Notice of Motion and Motion; the accompanying Declaration

11   of William E. Mosley; the accompanying Declaration of Tomoki Umeya; all other documents on

12   file in this matter; and any other matter that may be presented to the Court, including during the

13   hearing on this Motion.

14   DATED:  May 30, 2019              Respectfully submitted,

15                                    KILPATRICK TOWNSEND & STOCKTON LLP

16

17                                    By: /s/ *Steven D. Moore*
                                          STEVEN D. MOORE
18
                                      Attorneys for Defendant
19                                    GREE, Inc.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  ISSUES PRESENTED .........................................................................................1

III. STATEMENT OF FACTS ...................................................................................2

    A.   The Parties and Their ███████████████████ ...............................2

    B.   The EDTX and NDCA Actions .................................................................2

IV.  ARGUMENT ........................................................................................................3

    A.   Supercell Failed to Serve GREE (Fed. R. Civ. P. 12(b)(5)) ......................3

    B.   Supercell's Purported "Process" Was Deficient (Fed. R. Civ.
        P. 12(b)(4)).................................................................................................6

    C.   This Action's Patent-Related Claims Should Be Dismissed or
        Transferred under the First-to-File Rule .....................................................6

    D.   Supercell Cannot Establish Declaratory Judgment Jurisdiction
        over Counts IX or X of the First Amended Complaint (Fed. R.
        Civ. P. 12(b)(1)).........................................................................................9

        i.    Declaratory judgment jurisdiction requires an "actual
            controversy."................................................................................9

        ii.   Supercell cannot show an actual controversy
            concerning the '843 or '273 patents
            (Counts IX and X)........................................................................9

    E.   The Court Lacks Subject-Matter Jurisdiction over Supercell's
        Contract Claims (Fed. R. Civ. P. 12(b)(1)) ..............................................10

    F.   Supercell Has No Viable Contract Claims (Fed. R. Civ. P.
        12(b)(6))....................................................................................................12

    G.   Absent Dismissal or Transfer, This Matter Is Nevertheless
        Subject to an Automatic Stay under 35 U.S.C. § 325(a)(2)........................14

V.   CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991).................................................................................... 8

*Call v. Badgley*,
  254 F. Supp. 3d 1051 (N.D. Cal. 2017) ............................................................... 11, 12

*Cherry v. Spence*,
  249 F.R.D. 226 (E.D.N.C. 2008) ............................................................................. 6

*Click-to-Call Techs., LP v. Ingenio, Inc.*,
  899 F.3d 1321 (Fed. Cir. 2018)............................................................................... 15

*Coach, Inc. v. Diana Fashion*,
  No. 11-2315 SC, 2011 WL 4853360 (N.D. Cal. Oct. 13, 2011)................................... 6

*Cosper v. Smith & Wesson Arms Co.*,
  53 Cal. 2d 77, 84 (1959) ...................................................................................... 4, 5

*Dr. Beck & Co. GmbH v. General Elec. Co.*,
  210 F. Supp. 86 (S.D.N.Y. 1962) ........................................................................... 10

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005)................................................................................. 7

*Gates Energy Prod., Inc. v. Yuasa Battery Co.*,
  599 F. Supp. 368 (D. Colo. 1983) ........................................................................... 10

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993).................................................................................. 7

*Janakes v. U.S. Postal Serv.*,
  768 F.2d 1091 (9th Cir. 1985).................................................................................. 11

*Juniper Networks, Inc. v. MOSAID Techs. Inc.*,
  No. C 11-6264 PJH, 2012 WL 1029572 (N.D. Cal. Mar. 26, 2012) ....................... 7, 8

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) .................................................................. 12

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118, 127 (2007)........................................................................................ 9

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012)................................................................................. 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Meru Networks, Inc. v. Extricom Ltd.*,
No. C-10-02021 RMW, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) ...................... 7, 8

*U.S. ex. rel. Miller v. Public Warehousing Company KSC*,
636 Fed. Appx. 947 (9th Cir. 2016) ....................................................................... 4

*Ours Tech., Inc. v. Data Drive Thru, Inc.*,
645 F. Supp. 2d 830 (N.D. Cal. 2009) ................................................................... 9

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982)..................................................................................... 7

*Peralta v. Hispanic Bus., Inc.*,
419 F.3d 1064 (9th Cir. 2005)................................................................................ 10

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007)................................................................................. 9

*Sandoz Inc. v. Amgen Inc.*,
773 F.3d 1274 (Fed. Cir. 2014)........................................................................... 9, 10

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010)............................................................................ 11, 12

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)................................................................................. 6

*Supercell Oy v. GREE, Inc.*,
No. 4:17-cv-05556-YGR ........................................................................................ 2

*Thomas v. Takeda Pharmaceuticals USA Inc.*,
No. 1:16-cv-01566-LJO-EPG, 2017 WL 2214956,
at *2 (E.D. Cal. May 19, 2017)............................................................................. 5

*TVBI Co. Ltd. v. Hong Thao Thi Pham*,
No. 17-CV-05858-SI, 2018 WL 4616283 (N.D. Cal. Sept. 26, 2018) ..................... 15

*W. Coast Theater Corp. v. City of Portland*,
897 F.2d 1519 (9th Cir. 1990)................................................................................ 6

*Wornum v. Aurora Loan Servs., Inc.*,
No. C-11-02189 JCS, 2011 WL 3516055 (N.D. Cal. Aug. 11, 2011)...................... 12

*Yamaha Motor Co., Ltd. v. Superior Court*,
174 Cal. App. 4th 264 (2009) ............................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

28 U.S.C. § 1331 ................................................................................................................. 10, 11

28 U.S.C. § 1332 ................................................................................................................. 10, 11

28 U.S.C. § 1367(a) .................................................................................................................. 11

28 U.S.C. § 1367(c)(3) ............................................................................................................. 11

28 U.S.C. § 2201(a) ................................................................................................................... 9

35 U.S.C. § 315(b) ................................................................................................................... 15

35 U.S.C. § 325(a)(2) ................................................................................................. 1, 2, 14, 15

Cal. Code Civ. Proc. § 416.10(b) ............................................................................................ 4, 5

**Rules**

Fed. R. Civ. P. 4(c)(1) ................................................................................................................. 6

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 1, 2, 9, 10

Fed. R. Civ. P. 12(b)(4) ............................................................................................................ 1, 6

Fed. R. Civ. P. 12(b)(5) ............................................................................................................ 1, 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 2, 12

**Other Authorities**

U.S. Const. art. III, § 2 ........................................................................................................... 9, 11

1    ## I.  INTRODUCTION

2       This action should be dismissed, transferred, or stayed on multiple grounds:

3       <u>First</u>, Supercell failed to properly serve GREE; it relies on purported service on a distinct

4    entity that does not develop, distribute, market, or otherwise promote GREE's products in

5    California or elsewhere and thus cannot be GREE's "general manager" in California.

6       <u>Second</u>, even assuming proper service, Supercell's service package was *missing the*

7    *complaint*, rendering service incomplete.

8       <u>Third</u>, Supercell filed this declaratory relief action *after* GREE filed three lawsuits for

9    patent infringement in the Eastern District of Texas on overlapping patents.  Under the first-to-file

10   rule, this action should be dismissed or transferred in deference to judicial economy and comity.

11      <u>Fourth</u>, Supercell cannot show that an actual controversy exists to establish declaratory

12   judgment jurisdiction over at least Counts IX and X of the First Amended Complaint.

13      <u>Fifth</u>, the Court lacks subject-matter jurisdiction to hear Supercell's contract claims, and

14   even if it had jurisdiction, Supercell has not pled the essential elements for breach of contract.

15      <u>Sixth and finally</u>, even disregarding the foregoing fatal deficiencies, this action is stayed

16   under the automatic stay provision of 35 U.S.C. § 325(a)(2).

17      For each of the foregoing reasons, as further set forth below, this entire action should be

18   dismissed, transferred to the Eastern District of Texas, or stayed.

19   ## II.  ISSUES PRESENTED

20      1.  Whether Supercell's purported service on an entity that does not develop,

21          distribute, market, or promote GREE's products is deficient under Fed. R. Civ. P.

22          12(b)(5).

23      2.  Whether Supercell's failure to serve a copy of the operative pleadings renders

24          service defective under Fed. R. Civ. P. 12(b)(4).

25      3.  Whether the first-to-file rule requires outright dismissal or transfer to the Eastern

26          District of Texas of at least the patent-related claims in this action.

27      4.  Whether Counts IX and X should be dismissed for lack of subject matter

28          jurisdiction under Fed. R. Civ. P. 12(b)(1).

5. Whether, upon dismissal or transfer of Supercell's patent-related claims, Count XII for breach of contract should be dismissed based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

6. Whether Count XII should be dismissed under Fed. R. Civ. P. 12(b)(6) because Supercell fails to plead every required element of a breach of contract.

7. Whether this case is automatically stayed under 35 U.S.C. § 325(a)(2) because Supercell previously filed petitions for Post-Grant Review ("PGR") on three patents at issue in this action.

### III.   STATEMENT OF FACTS

**A.    The Parties and Their** █████████████████████

Japan-based GREE and Finland-based Supercell both develop and produce mobile videogames, typically played on smartphones.  They have competed in that market since Supercell released its first game in 2011—four years after GREE released its first mobile game.  Both companies have released games around the world, including in the U.S. and Japan.

In 2016 and 2017, GREE learned that Supercell was infringing patents granted on GREE's inventions and filed actions in Japan.  Supercell responded by filing retaliatory suits in Japan, China, and in this Court (*Supercell Oy v. GREE, Inc.*, No. 4:17-cv-05556-YGR), using patents it recently acquired from its corporate parent, China-based Tencent Holdings.

Following Court-ordered mediation, the parties reached a ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████. *See* Miller Decl.,[1] Ex. A (submitted under seal), at § 6.1.

**B.    The EDTX and NDCA Actions**

GREE filed three complaints for patent infringement in the Eastern District of Texas (the "EDTX Actions"), which collectively asserted GREE's U.S. Patent Nos. 9,636,583; 9,770,659;

---

[1] Citations to the "Miller Decl." refer to the April 29, 2019 Declaration of Geoffrey R. Miller in Support of Motion for Temporary Restraining Order and Preliminary Injunction, a "Public Redacted Version" of which was filed in this case as Docket No. 17-7.

9,597,594; 9,604,137; 9,956,481; 9,795,873; and 9,774,655, at midnight Central Time on February 28, 2019 ███████████████████████. Dkt. No. 26-1, at ¶¶ 3-9, Exs. A-C. Approximately two hours after GREE filed the EDTX Actions, Supercell filed the instant action (the "NDCA Action"). Dkt. No. 1. Supercell's original complaint asserted claims for declaratory judgment of non-infringement and/or invalidity as to six of the seven patents at issue in the EDTX Actions (it omitted only the '655 patent); additional causes of action for declaratory relief as to U.S. Patent Nos. 9,968,843 and 9,457,273; and a cause of action for alleged breach ████████ ████████████████████████. One day later (on March 1, 2019), Supercell filed (under seal) a First Amended Complaint, which added an additional claim for breach of contract based on GREE's alleged violation of the ████████████████████ and added a cause of action for declaratory relief as to the '655 patent. The EDTX and NDCA Actions each remain pending.[2]

GREE effected service of the EDTX Actions on Supercell on March 26, 2019, and Supercell has now answered or filed a motion to dismiss in each of those actions without challenging service of process. However, as set forth in more detail below, Supercell has yet to properly serve GREE, something it was required to do formally because it had told GREE that the ████ superseded and nullified an earlier agreement permitting service of complaints by electronic mail to outside counsel. *See* Miller Decl., Ex. F (submitted under seal).

Instead of serving GREE, Supercell purported to serve process on the registered agent of a company called "GFR Fund I GP, LLC" (hereinafter, "GFR"), which, as explained in more detail below, was not effective to serve GREE. *See* Dkt. No. 15.

## IV.   ARGUMENT

### A.   Supercell Failed to Serve GREE (Fed. R. Civ. P. 12(b)(5))

GREE is a Japanese corporation headquartered in Tokyo. Umeya Decl., ¶ 3. Because Japan is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Convention"), Supercell should have followed the procedures set forth in the Convention to effect service of process. It did not.

---

[2] GREE filed three additional complaints for patent infringement in the Eastern District of Texas on May 6, May 13, and May 27, asserting an additional four patents against Supercell. Supercell did not file any complaints seeking declaratory relief as to any of the newly-asserted patents.

1    Instead, as noted above, Supercell claims it served GREE through a subsidiary, "GFR

2    Fund I GP, LLC." *See* Dkt. No. 15.  However, GFR does not develop, distribute, market, or

3    promote any GREE games in California (or anywhere in the United States).  Umeya Decl., ¶ 5.

4    Rather, GFR is the general partner of an investment fund that invests in "extended reality" (XR)

5    and virtual reality (VR) technology companies; GREE is one of multiple limited partners of that

6    same fund. *See id.*  Moreover, GFR acts independently of GREE.  *See id.*

7    Supercell presumably believes that it effected service on GREE by virtue of California

8    Code of Civil Procedure section 416.10(b), which permits service on a company through its

9    "general manager" within the State.  But GFR is not GREE's "general manager" in California, and

10   Supercell does not and cannot make any showing to the contrary.  The seminal case addressing

11   this issue is the Supreme Court of California's decision in *Cosper v. Smith & Wesson Arms Co.*,

12   which held that an agent qualified as a "general manager" of its principal if the agent provided the

13   principal with "the opportunity for regular contact with its customers and a channel for a

14   continuous flow of business into the state."  53 Cal. 2d 77, 84 (1959) (citation omitted).  Indeed,

15   the Supreme Court of California deemed this the "essential factor" of the analysis.  *Id.*

16   The Ninth Circuit, in the unpublished decision *U.S. ex. rel. Miller v. Public Warehousing*

17   *Company KSC*, 636 Fed. Appx. 947 (9th Cir. 2016), noted that every case applying *Cosper* in

18   which a court has deemed a subsidiary to be an involuntary agent for service of process of a parent

19   involved a "sufficiently close connection" between the subsidiary and the parent, based on the

20   "frequency and quality of contact," the benefits the parent received in California, and the

21   likelihood that the subsidiary would provide actual notice to its parent of service of process.  *Id.* at

22   949.  For example, the California Court of Appeal held that service on Yamaha Motor Company,

23   Ltd. ("Yamaha-Japan") through its American subsidiary ("Yamaha-America") was valid under

24   Section 416.10(b) (and *Cosper*) where Yamaha-America's "close connection" to Yamaha-Japan

25   was evident from the following facts: (1) Yamaha-America was the exclusive importer and

26   distributor for Yamaha-Japan's vehicles, (2) Yamaha-America provided warranty and owner

27   manuals for Yamaha-Japan's vehicles, (3) Yamaha-America conducted testing of Yamaha-Japan's

28   vehicles, (4) Yamaha-America marketed Yamaha-Japan's vehicles, (5) Yamaha-America received

all customer complaints and accident reports for Yamaha-Japan vehicles in the United States, and (6) Yamaha-Japan touted Yamaha-America as its "Regional Headquarters for North America." *Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 268 (2009).

Here, by sharp contrast, Supercell cannot offer any facts to suggest a "sufficiently close connection" between GFR and GREE. Indeed, GFR is not and has not been involved in GREE's games at all. Umeya Decl., ¶ 5. Absent proof of a "sufficiently close connection," a complaint served on an alleged "general manager" under Section 416.10(b) should be dismissed. This was the result in *Thomas v. Takeda Pharmaceuticals USA Inc.*, where the plaintiff purported to serve the defendant Takeda (a Japanese company) through its Illinois-based subsidiaries, based on its theory that those subsidiaries were "Takeda's sales agents and distributors in the United States, including California" and thus Takeda's "general manager[s]" within the State under Section 416.10(b). No. 1:16-cv-01566-LJO-EPG, 2017 WL 2214956, at *2 (E.D. Cal. May 19, 2017). In support of its contention, the plaintiff identified a webpage on Takeda's official website identifying its "U.S. Business Unit" (which included the U.S. subsidiaries) as "a key contributor to [Takeda's] global growth and success" and "Takeda's largest business unit outside Japan." *Id. at* *5. The *Thomas* court rejected plaintiff's argument because it offered nothing to show what, if anything, Takeda's subsidiaries actually did "in terms of marketing, developing, or selling products," nor "how much of those efforts [were] geared toward California, or any indication of the day-to-day relationship between [any of the subsidiaries] and Takeda such that actual notice to Takeda of service of the complaint would be likely." *Id.* The court noted that, by contrast, *Cosper* involved "extensive evidence as to the nature of the relationship" between the agent and principal. The *Thomas* court thus found service incomplete and dismissed the complaint as to Takeda. *Id.*

Here, Supercell likewise can offer nothing to show that GFR does anything concrete "in terms of marketing, developing, or selling [GREE] products" because GFR *does none of those things*. Umeya Decl., ¶ 5. Nor can Supercell suggest a sufficiently close connection between GFR and GREE to render GFR a "general manager" of GREE for purposes of Section 416.10(b). The inquiry ends there. Because GFR is not GREE's "general manager" in California, service remains incomplete and ineffective, and the action should be dismissed.

**B.      Supercell's Purported "Process" Was Deficient (Fed. R. Civ. P. 12(b)(4))**

Even if GFR were GREE's "general manager" in California, service remains incomplete because the materials served on GFR are defective.  Mosley Decl., ¶¶ 3-4.  Specifically, among other irregularities,[3] Supercell's purported service package was ***missing a copy of the complaint***. Mosley Decl., ¶ 4; Ex. A.  Supercell only included the heavily-redacted copies of the original Complaint and First Amended Complaint, which Supercell had submitted as exhibits to its administrative motions to file under seal (Dkt. Nos. 2-3 and 6-3), and not the full, un-redacted text of those complaints.  Mosley Decl., ¶ 4; Ex. A, at 50-72, 271-297.  Indeed, those documents redact the entirety of the allegations pertaining to Supercell's causes of action for alleged breach of contract (Count XII).  *See id.*  As such, those materials could not have provided notice of Supercell's breach of contract claims even if properly served on GREE.  *See* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."); *Coach, Inc. v. Diana Fashion*, No. 11-2315 SC, 2011 WL 4853360, at \*2 (N.D. Cal. Oct. 13, 2011) ("Service of a summons without a copy of the full complaint ***constitutes ineffective service of process***.") (*citing W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1529 (9th Cir. 1990)) (emphasis added); *Cherry v. Spence*, 249 F.R.D. 226, 229 (E.D.N.C. 2008) (explaining that Rule 4 requires service of the full complaint "because a defendant is required to admit or deny each allegation therein"); *see also Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011) (explaining that a complaint must give "notice of [a] claim such that the opposing party may defend himself or herself effectively.").  Because Supercell failed to give "fair notice" of its claims in the materials it delivered to GFR, the First Amended Complaint should be dismissed under Rule 12(b)(4).

**C.      This Action's Patent-Related Claims Should Be Dismissed or Transferred under the First-to-File Rule**

Regardless of defective service, Supercell's patent-related claims should be dismissed (or transferred) under the "first-to-file" rule—a "doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."

---

[3] For example, the issued Summons reflects "SUPPERCEL" as the purported plaintiff.  *See* Mosley Decl., Ex. A, at 4.

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (citation omitted).  "[Courts] apply the general rule favoring the forum of the first-filed case, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.'"  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (*quoting Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993)); *see also Meru Networks, Inc. v. Extricom Ltd.*, No. C-10-02021 RMW, 2010 WL 3464315, at *2 (N.D. Cal. Aug. 31, 2010) (dismissing declaratory judgment action in deference to first-filed patent infringement action).  "The first-to-file rule 'permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'"  *Juniper Networks, Inc. v. MOSAID Techs. Inc.*, No. C 11-6264 PJH, 2012 WL 1029572, at *2 (N.D. Cal. Mar. 26, 2012) (*quoting Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982)).

Supercell admits that GREE filed the EDTX Actions approximately two hours before Supercell filed the NDCA Action.  *See* Dkt. No. 17-3, at 6-7.  Because Supercell admits the EDTX Actions were first-filed, the NDCA Action's patent-related claims should be dismissed, or otherwise transferred to the Eastern District of Texas.

This Court has dismissed or transferred later-filed actions based on the first-to-file rule on numerous occasions.  For example, in *Meru Networks, Inc. v. Extricom Ltd.*, this Court considered whether to dismiss, transfer, or stay a later-filed "California Action" (a complaint seeking a declaratory judgment for patent non-infringement and invalidity) in favor of a "Delaware Action" (a patent infringement lawsuit) filed hours beforehand, following the expiration of a litigation standstill agreement ▮▮▮▮▮▮▮.  2010 WL 3464315, at *1.  Applying the first-to-file rule, Judge Whyte dismissed the "California Action" in its entirety.  *Id.*, at *2.  In doing so, Judge Whyte rejected the California Action plaintiff's argument that the Northern District of California was the more convenient forum, noting that the "bright line rule allowing the court in the first-filed action to make the convenience determination comports with the policy of judicial economy that the [first-to-file] rule is intended to serve."  *Id.* [4]

---

[4] To the extent Supercell argues "convenience" overrides the first-to-file rule, that is an issue the *Eastern District of Texas* should resolve.  *See Juniper Networks*, 2012 WL 1029572, at *2 ("[T]he court with the first-filed action [] should normally weigh the balance of convenience and any other

1    The rationale for dismissing the action in *Meru Networks* applies with equal force here,

2    where GREE likewise filed the EDTX actions upon ████████████████████████████, and

3    despite Supercell's argument that this Court is (allegedly) the more convenient forum.  It also

4    makes no difference that Supercell raises claims concerning two patents not asserted in the EDTX

5    Actions (the '843 and '273 patents).  As explained more fully below, there is no actual

6    controversy underlying those patents, and therefore no subject-matter jurisdiction over those

7    claims.  But even assuming the Court possessed jurisdiction to adjudicate a request for declaratory

8    relief regarding those patents, the first-to-file rule counsels dismissal or transfer of those claims as

9    well.  In *Juniper Networks,* this Court transferred a declaratory judgment action to the District of

10   Delaware (the forum of the first-filed action), despite the fact that the later-filed California action

11   involved two patents not asserted in the "Delaware Action."  2012 WL 1029572, at *2.  The Court

12   observed that, given the "youth of the Delaware Action," there was no reason the Delaware court

13   could not adjudicate claims relating to the non-overlapping patents.  *Id.*  Accordingly, this Court

14   transferred the entire action to the District of Delaware, ruling that the "first to file rule [was]

15   ***dispositive***" of where the action should proceed.  *Id.* (emphasis added).

16   Here, too, the first-to-file rule is "dispositive."  Supercell cannot drop anchor in this

17   District merely by seeking declaratory relief as to the '843 and '273 patents; first, because there is

18   no actual controversy underlying those patents (and thus no subject-matter jurisdiction), and

19   second, because the Eastern District of Texas can adjudicate any dispute concerning those patents.

20   Nor can Supercell anchor itself to this District based on its purported contract claims, which, as

21   discussed below, should be dismissed in any event, but which also are not related to the merits of

22   GREE's patent infringement claims.  Accordingly, the NDCA Action's patent-related claims

23   should be dismissed, or otherwise transferred to the Eastern District of Texas.

24   //

25   //

26   //

27

28   factors that might create an exception to the first-to-file rule.") (*citing Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)); *Meru Networks*, 2010 WL 3464315, at *2.

1

2

3

**D.** **Supercell Cannot Establish Declaratory Judgment Jurisdiction over Counts IX or X of the First Amended Complaint (Fed. R. Civ. P. 12(b)(1))**

      i.    Declaratory judgment jurisdiction requires an "actual controversy."

4

5

6

7

8

9

10

11

12

13

14

Federal courts may only adjudicate actual cases or controversies.  U.S. Const. art. III, § 2.  The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party seeking such declaration" in a "case of actual controversy within its jurisdiction[.]"  28 U.S.C. § 2201(a).  However, "[a]bsent a true case or controversy," a complaint for a declaratory judgment "will fail for lack of [subject-matter] jurisdiction under Rule 12(b)(1)."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citation omitted).  "The plaintiff bears the burden of establishing the propriety of the court's jurisdiction."  *Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 833 (N.D. Cal. 2009).  The Court may consider facts outside of the four corners of the complaint to decide whether it has subject-matter jurisdiction over the action.  *See id.* at 834.  Here, as set forth below, Counts IX and X must be dismissed under Rule 12(b)(1) for lack of an "actual controversy" underlying those claims.

15

16

      ii.    Supercell cannot show an actual controversy concerning the '843 or '273 patents (Counts IX and X).

17

18

19

20

21

22

23

24

25

26

27

28

Supercell cannot show (and has not adequately pled) that an actual controversy exists as to its claims which seek a declaratory judgment of non-infringement as to the '843 and '273 patents, which GREE did not assert in the EDTX Actions.  In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court held that a party seeking declaratory judgment jurisdiction for a patent dispute must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  549 U.S. 118, 127 (2007).  "Immediacy" is measured based on consideration of "how far in the future the potential infringement is, whether the passage of time might eliminate or change any dispute, and how much if any harm the potential infringer is experiencing, at the time of suit, that an adjudication might redress."  *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014) (citation omitted).  "Reality" is measured by considering "any uncertainties about whether the plaintiff will

1  take an action that will expose it to potential infringement liability and, if so, exactly what action."

2  *Sandoz*, 773 F.3d at 1278 (citation omitted).

3       Supercell cannot make this threshold showing.  As previously noted, GREE has not

4  asserted either of these patents against Supercell.  Indeed, it has not ever suggested that Supercell

5  has infringed those patents.  Umeya Decl., ¶ 6.  That is because, at present, GREE is not aware of

6  any facts to suggest infringement of the specific claims in those two patents.  Nevertheless,

7  Supercell alleges a controversy exists because (a) its "Boom Beach" game was alleged to infringe

8  a Japanese patent to which the '843 patent claims priority, and (b) its "Clash Royale" game was

9  alleged to infringe a Japanese patent to which the '273 patent claims priority.  *See* First Amended

10 Complaint, ¶ 2.  That is not sufficient here: those Japanese patents have different claims with

11 different scopes from either of the '843 and '273 patents—consequently, the mere fact that GREE

12 sued Supercell for infringement of those Japanese patents, without any corresponding threat to

13 enforce either the '843 or '273 patents, is not sufficient to establish an "actual controversy."  *See,*

14 *e.g.*, *Gates Energy Prod., Inc. v. Yuasa Battery Co.*, 599 F. Supp. 368, 374 (D. Colo. 1983) ("It

15 has been held that even where a plaintiff . . . had been sued for infringement of a defendant's

16 foreign counterpart patent, there was no actual controversy sufficient to form the basis of subject

17 matter jurisdiction.") (*citing Dr. Beck & Co. GmbH v. General Elec. Co.*, 210 F. Supp. 86, 92

18 (S.D.N.Y. 1962)).  Supercell provides nothing to meet its burden to show that the claims of the

19 Japanese and U.S. patents are of the same scope such that an allegation of infringement of one

20 implicates a controversy regarding infringement of the other.  Because Supercell cannot

21 demonstrate a "substantial controversy . . . of sufficient immediacy and reality" pertaining to

22 either of the '843 or '273 patents, its claims for declaratory relief cannot be maintained.

23    **E.    The Court Lacks Subject-Matter Jurisdiction over Supercell's Contract
            Claims (Fed. R. Civ. P. 12(b)(1))**

24

25     "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts

26 either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C.

27 § 1331."  *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).  Diversity

28 jurisdiction exists in civil suits where the amount in controversy "exceeds the sum or value of

1   $75,000, exclusive of interest and costs, and is between citizens of different States." *See* 28

2   U.S.C. § 1332.  Federal question jurisdiction exists in "all civil actions arising under the

3   Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

4        Federal district courts may also exercise "supplemental" jurisdiction over "all other claims

5   that are so related to claims in the action within such original jurisdiction that they form part of the

6   same case or controversy under Article III of the United States Constitution."  28 U.S.C. §

7   1367(a).  However, "[t]he Court may decline to exercise supplemental jurisdiction if it has

8   dismissed all claims over which it has original jurisdiction." *Call v. Badgley*, 254 F. Supp. 3d

9   1051, 1069 (N.D. Cal. 2017) (declining to exercise supplemental jurisdiction over state law claims

10  following dismissal of federal law claims) (*citing* 28 U.S.C. § 1367(c)(3); *Sanford v.*

11  *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)).  Indeed, "[i]n the usual case in which all

12  federal-law claims are eliminated before trial, the balance of factors to be considered under the

13  pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

14  toward ***declining to exercise jurisdiction over the remaining state-law claims***." *Sanford*, 625

15  F.3d at 561 (emphasis added) (citations omitted).

16       Supercell's breach of contract claims (Count XII) do not implicate federal question

17  jurisdiction.  Thus, this Court may only adjudicate those claims if Supercell can establish the

18  threshold requirements for diversity or supplemental jurisdiction.  Supercell can do neither.

19       First, Supercell cannot establish any grounds for this Court to exercise diversity

20  jurisdiction over its contract claims.  Supercell has not pled—and has no basis to plead—an

21  amount in controversy equal to or greater than $75,000.  Indeed, for the reasons set forth below,

22  Supercell cannot plausibly assert damages of this amount for alleged breach of either ███

23  ███████████████████.  Thus, even assuming the existence of *any* damages,

24  Supercell must seek recourse for alleged breach in California's state court system, which has no

25  minimum controversy requirement—not the Northern District of California (regardless of the

26  ███████████████████████████).  *See Janakes v.*

27  *U.S. Postal Serv.*, 768 F.2d 1091, 1095 (9th Cir. 1985) (citations omitted) ("[P]arties cannot by

28  stipulation or waiver grant or deny federal subject matter jurisdiction.").

1   Second, as set forth above, Supercell's patent-related claims should be dismissed or

2   transferred under the first-to-file rule.  Without those claims, no federal question would remain to

3   implicate the exercise of supplemental jurisdiction over claims that do not meet the standards for

4   this Court's diversity jurisdiction.  *Sanford*, 625 F.3d at 561; *Call*, 254 F. Supp. 3d at 1069.  For

5   these reasons, Count XII of the First Amended Complaint should be dismissed.

6       **F.      Supercell Has No Viable Contract Claims (Fed. R. Civ. P. 12(b)(6))**

7   Supercell's purported contract claims also fail because Supercell has not pled and *cannot*

8   plead facts to establish a claim for breach of contract.  "The essential elements of a breach of

9   contract claim are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

10  defendant's breach, and (4) the resulting damages to plaintiff."  *In re LinkedIn User Privacy Litig.*,

11  932 F. Supp. 2d 1089, 1093-94 (N.D. Cal. 2013).  A plaintiff must plead sufficient facts to

12  establish each of the "essential elements" of a breach of contract claim, or the claim will fail under

13  Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Wornum v. Aurora Loan Servs., Inc.*, No. C-

14  11-02189 JCS, 2011 WL 3516055, at *9 (N.D. Cal. Aug. 11, 2011) (dismissing contract claim

15  under Rule 12(b)(6) for failure to plead sufficient facts to establish the existence of a contract).

16  Here, Supercell pleads no facts to establish the "*essential element*" of damages.  *In re*

17  *LinkedIn*, 932 F. Supp. 2d at 1093-94 (emphasis added).  Nor could it.  The bases for Supercell's

18  purported breach of contract claims are: (1) ██████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████    First Amended Complaint, at ¶¶ 136-137.  Notwithstanding conclusory

23  assertions that it "suffered damages, which continue to accrue" (First Amended Complaint, ¶ 138),

24  Supercell cannot plausibly allege damages from either alleged breach.[5]

25  With respect to GREE's alleged violation of ████████████, Supercell's own conduct

26  underscores that it suffered neither damages nor prejudice.  ████████████████████

27

---

28  [5] Although Supercell's breach of contract claims fail on their merits, for purposes of the instant motion, GREE will focus on the sufficiency of Supercell's pleadings as to alleged damages.


1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████.”  Miller Decl., Ex. A, at § 6.1.

3  The purpose for the ████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████  *See* First Amended Complaint, ¶ 4 ████████████

6  ████████████████████████████████████████████████████  Here,

7  the only patent Supercell did not include in its original complaint was the '655 patent; Supercell

8  amended its original complaint *within a day* to include a claim for declaratory relief as to that

9  patent.  And because the EDTX Actions were first-filed, it would have made no difference had

10  Supercell included the '655 patent in its original complaint—under no circumstance would

11  Supercell have been the "first filer."

12  Moreover, the basis for Supercell's breach of contract cause of action in its *original*

13  complaint was ████████████████████████████████████████████████

14  ████  (*see* original complaint, ¶ 2).  But Supercell included a cause of action for declaratory relief

15  with respect to the '873 patent in the *original* complaint, which proves either (1) ████████

16  ████████████████████████████████████████████████  (which

17  proves the absence of a breach), or (2) ████████████████████████  (which

18  proves the absence of an injury).  In either case, no damages flow from these facts, nor has

19  Supercell articulated any plausible allegation that they do.

20  Supercell's claim based on alleged breach of the ████████████ is similarly deficient.

21  Supercell does not plead how GREE's commencement of the EDTX Actions damaged Supercell

22  in any plausible way.  Even if GREE had ████████████████████ (which it did not, for

23  reasons it explained in its Opposition to Supercell's Motion for Temporary Restraining Order and

24  Preliminary Injunction), the "harm" about which Supercell complains—*i.e.*, being sued in another

25  jurisdiction—is pure fiction.  To illustrate the point: had GREE filed the EDTX Actions at 12:00

26  a.m. *Pacific Time* on February 28 and before Supercell filed this action, Supercell would have no

27  breach claim, but the "harm" would be no different than the "harm" it complains of now.  This is

28  not surprising, as the ████████████████████████████████████, and

1    thus GREE was fully entitled to sue Supercell in the Eastern District of Texas or any other district

2    where jurisdiction and venue are proper as to Supercell.  No damages can flow from these

3    allegations, nor has Supercell alleged any plausible basis to believe they do.

4         Because Supercell does not allege any damages arising from alleged breach of the ▮▮,

5    Supercell fails to state a claim for relief under Count XII of the First Amended Complaint.

6         **G.    Absent Dismissal or Transfer, This Matter Is Nevertheless Subject to an**
             **Automatic Stay under 35 U.S.C. § 325(a)(2)**

7         If the Court declines to dismiss or transfer the NDCA Action, the action is nevertheless

8    stayed under 35 U.S.C. § 325(a)(2), which provides: "If [a] [PGR] petitioner . . . files a civil action

9    challenging the validity of a claim of [a] patent on or after the date on which the petitioner files a

10   petition for post-grant review of the patent, ***that civil action shall be automatically stayed*** until

11   either—(A) the patent owner moves the court to lift the stay; (B) the patent owner files a civil

12   action or counterclaim alleging that the petitioner [] has infringed the patent; or (C) the petitioner

13   or real party in interest moves the court to dismiss the civil action."  (Emphasis added.)

14        Before filing the NDCA Action, Supercell filed PGR petitions directed to the '594, '583,

15   and '659 patents (the "PGR Patents").  Mosley Decl., Exs. B-D.  Thereafter, Supercell filed this

16   action, seeking declaratory judgments of invalidity for the PGR Patents.  Based on the plain

17   language of Section 325(a)(2), this "civil action" in its entirety is automatically stayed until one of

18   the exceptions is triggered.  *See* 35 U.S.C. § 325(a)(2).

19        None of the exceptions to the automatic stay provision has occurred since this action was

20   filed.  With respect to exceptions "(A)" and "(C)", GREE (the patent owner) has not moved (and

21   will not move) the Court to lift the stay, and Supercell (the PGR petitioner) has not moved (and

22   presumably will not move) the Court to dismiss this action.

23        Moreover, exception "(B)" is inapplicable because GREE's infringement actions as to the

24   PGR Patents were filed before Supercell filed this action.  The plain language of Section 325(a)(2)

25   identifies the PGR *petitioner's* (Supercell's) filing as the trigger for an automatic stay.  35 U.S.C.

26   § 325(a)(2) ("If the ***petitioner*** . . . files a civil action challenging the validity of a claim of [a]

27   patent on or after the date on which the petitioner files a petition for post-grant review of the

28

1   patent, that civil action shall be automatically stayed[.]") (emphasis added).  The stay lasts "until"

2   the patent owner files a complaint asserting infringement of the subject patent, meaning that, to lift

3   the stay, the infringement action must be filed *after* the PGR petitioner's complaint asserting

4   invalidity.  35 U.S.C. § 325(a)(2) ("[T]hat civil action shall be automatically stayed ***until*** . . . the

5   patent owner files a civil action [alleging infringement by the petitioner].") (emphasis added).

6          The "plain and unambiguous" meaning of the statute controls.  *See Click-to-Call Techs.,*

7   *LP v. Ingenio, Inc.*, 899 F.3d 1321, 1329-30 (Fed. Cir. 2018) (relying on the "ordinary,

8   contemporary, [and] common meaning[s]" of the terms "served" and "complaint" in analyzing

9   statutory time bar provision of 35 U.S.C. § 315(b)).  Here, the plain and unambiguous meaning of

10  "until" within the framework of Section 325(a)(2) mandates the imposition and maintenance of a

11  stay up to the time that GREE files a complaint asserting infringement of the subject patent.  *See*

12  *TVBI Co. Ltd. v. Hong Thao Thi Pham*, No. 17-CV-05858-SI, 2018 WL 4616283, at *4 (N.D. Cal.

13  Sept. 26, 2018) ("[T]he dictionary definition of 'until' is 'up to the time that[.]'").

14         Here, GREE filed the EDTX Actions before Supercell filed the NDCA Action; thus, at the

15  time GREE filed the EDTX Actions (which assert the PGR Patents), there was no stay yet in

16  effect because the NDCA Action did not exist.  Supercell triggered the automatic stay provision

17  when it subsequently filed the NDCA Action.  And because GREE has not filed a civil action or

18  counterclaim asserting infringement of the PGR Patents since the stay went into effect, this NDCA

19  Action was, and remains, stayed upon filing.[6]

20  **V.     CONCLUSION**

21         Multiple independent reasons compel dismissal or transfer of this action.  For the reasons

22  set forth above, the Court should dismiss this entire action, or alternatively transfer the patent-

23  related claims to the Eastern District of Texas and dismiss Supercell's breach of contract claims.

24

---

25  [6] Indeed, the *entire* NDCA Action is stayed pursuant to 35 U.S.C. § 325(a)(2): the statute does not
    carve out exceptions for claims that would not otherwise trigger the automatic stay provision.  *See,*
26  *e.g.*, *Click-to-Call*, 899 F.3d at 1330 (declining to read exceptions or exemptions into time bar
    provision of 35 U.S.C. § 315(b) where the statute was clear and unambiguous in its language); *see*
27  *also* 35 U.S.C. § 325(a)(2) ("If the petitioner . . . files a civil action challenging the validity of a
    claim of [a] patent on or after the date on which the petitioner files a petition for post-grant review
28  of the patent, ***that civil action*** shall be automatically stayed . . . .") (emphasis added).

1    DATED:  May 30, 2019            Respectfully submitted,

2                                    KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                    By: /s/ *Steven D. Moore*
                                         STEVEN D. MOORE
5
                                     Attorneys for Defendant
6                                    GREE, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     71974019V.1

     NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER, OR STAY              - 16 -
     CASE NO. 3:19-CV-01106-JD