MICHAEL J. SACKSTEDER (CSB No. 191605)
msacksteder@fenwick.com
BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

GEOFFREY MILLER (CSB No. 308676)
gmiller@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

Attorneys for Plaintiff
Supercell Oy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Supercell Oy, | Case No.: 3:19-cv-01106-JD |
| Plaintiff, | **PLAINTIFF SUPERCELL'S OPPOSITION TO DEFENDANT GREE'S MOTION TO DISMISS, TRANSFER, OR STAY** |
| v. | |
| GREE, Inc. | Date:  July 11, 2019 |
| Defendants. | Time:  10:00 a.m.<br>Courtroom:  11<br>Judge:  Honorable James Donato |

# Public Redacted Version of Document

# Sought To Be Sealed

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

THIS ACTION WAS PROPERLY FILED, AND GREE HAS
SHOWN NO BASIS FOR DISMISSAL, TRANSFER, OR STAY ................................ 3

    I.      Supercell Properly Served GREE ..................................................... 3

           A.     GREE's Investment Arm Is Its "General Manager" For The
                 Purpose Of Service Under California Law. ................................ 3

           B.     GREE Is Fully on Notice of the Claims Against It, And
                 Supercell's Service Of A Redacted Complaint Does Not
                 Merit Dismissal. ...................................................................... 6

    II.     This Action Is The Only Properly Filed Case, And The Court
          Should Retain Its Jurisdiction Over The Suit ................................... 8

    III.    This Court Has Subject Matter Jurisdiction Over Supercell's
          Declaratory Judgment Claims ........................................................ 12

    IV.    There is No Basis To Dismiss The Breach Of Contract Claims .......... 13

           A.     This Court Has Supplemental Jurisdiction Over The
                 Contract Claims ....................................................................... 13

           B.     Supercell Adequately Pled Harm From GREE'S Breach Of
                 Contract ................................................................................... 14

    V.     The Stay Provisions of the AIA Are Intended To Prevent, Not Enable,
          Forum-Shopping, And No Stay Is Warranted .................................. 14

CONCLUSION ............................................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atl. Marine Constr. Co. v. U. S. Dist. Court*,
 571 U.S. 49 (2013)...............................................................................................................11

*Boustred v. Cnty. Of Santa Cruz*,
 No. C-08-00546 RMW, 2008 WL 2156996, at *2 (N.D. Cal. May 20, 2008) ..........................8

*Chan v. Soc'y Expeditions*,
 39 F.3d 1398 (9th Cir. 1994)..................................................................................................7

*Cherry v. Spencer*,
 249 F.R.D. 226 (E.D.N.C. 2008) ..........................................................................................7

*Cosper v. Smith & Wesson Arms*,
 53 Cal. 2d 77 (Cal. 1959)..............................................................................................4, 5, 6

*Dodocase VR, Inc. v. MerchSource, LLC*,
 No. 17-cv-07088-EDL, 2018 WL 1475289 (N.D. Cal March 26, 2018);
 *aff'd*, No. 2018-1724, 2019 WL 1758481 (Fed. Cir. Apr. 18, 2019)...........................10, 11, 14

*Elec. Specialty Co. v. Rd. & Ranch Supply, Inc.*,
 967 F.2d 309 (9th Cir. 1992)................................................................................................3, 7

*Falco v. Nissan North America*,
 987 F. Supp. 2d 1071 (C.D. Cal 2013) ..................................................................................4

*Futurewei Technologies, Inc. v. Acacia Research Corp.*,
 737 F. 3d 704 (Fed. Cir. 2013)..............................................................................................9

*Genentech, Inc. v. Eli Lilly and Co.*,
 998 F. 2d 931 ...................................................................................................................11

*Genentech, Inc. v. GlaxoSmithKline LLC*,
 No. 5:10-CV-04255-JF, 2010 WL 4923954 (N.D. Cal. Dec. 1, 2010)................................9, 10

*General Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*,
 651 F.3d 1355 (Fed. Cir. 2011)............................................................................................11

*Hewlett-Packard Co. v. Acceleron LLC*,
 587 F.3d 1358 (Fed. Cir. 2009)........................................................................................12, 13

*Khachatryan v. Toyota Motor Sales, U.S.A*,
 578 F. Supp. 2d 1224 (C.D. Cal. 2008) ..............................................................................4, 5

*Laboratory Corp. of America, Inc. v. Upstate Testing Lab., Inc.*,
 967 F. Supp. 295 (N.D. Ill. 1997) .......................................................................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ........................................................................................................12

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012) ........................................................................................9

*Meru Networks, Inc. v. Extricom Ltd.*,
    Case No. C-10-02021-RMW, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) ........................11

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) .....................................................................................9, 12

*Miracle Auto Center*,
    68 Cal. App. 4th at 821-22 ...............................................................................................10

*Moletech Global H.K. v. Pojery Trading*,
    No. C 09-00027 SBA, 2009 WL 506873 (N.D. Cal. Feb 27, 2009) ........................................8

*Omron Healthcare, Inc. v. Maclaren Exports Ltd.*,
    28 F.3d 600 (7th Cir.1994) ...............................................................................................14

*Overland Machined Products v. Swingline, Inc.*,
    36 Cal. Rptr. 330 (Cal. Ct. App. 1964) ............................................................................5

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed.Cir.2008) ..........................................................................................12

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ..................................................................................12, 13

*Supercell Oy v. GREE, Inc.*,
    PGR2018-00071, Paper No. 7 (P.T.A.B. Jan. 23, 2019) ....................................................2

*Teva Pharmaceuticals USA, Inc. v. Abbott Laboratories*,
    301 F. Supp. 2d 819 (N.D. Ill. 2004) ...............................................................................12

*Thomas v. Takeda Pharms. United States*,
    2017 WL 2214956 (E.D. Cal. May 18, 2017).....................................................................5

*Travelers Cas. and Sur. Co. of America v. Brenneke*,
    551 F.3d 1132 (9th Cir. 2009).......................................................................................3, 7

*Twitter, Inc. v. Skootle Corp.*,
    No. C 12-1721 SI, 2012 WL 2375486 (N.D. Cal. June 22, 2012)........................................14

*United States ex rel. Miller v. Pub. Warehousing Co. KSC*,
    636 F. App'x 947 (9th Cir. 2016) ......................................................................................4

*Verde Media v. Levi*,
    No. 14-cv-00891, 2014 WL 3372081 (N.D. Cal. July 9, 2014)..............................................8

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ...........................................................................................4

*Yamaha Motor Co. v. Sup. Ct.*,
  94 Cal. Rptr. 3d 494 (Cal. Ct. App. 2009) ........................................................4, 6

*Zabner-Willis v. Gladden*,
  No. CIVA 2:04CV229 KSMTP, 2007 WL 184663, at 3* (S.D. Miss. Jan
  19,2007) ..............................................................................................................7

**STATUTES**

28 U.S.C. § 1367 ....................................................................................................13

28 U.S.C. § 1404(a) .................................................................................................9

35 U.S.C. § 325(a)(2) ........................................................................................14, 15

Cal. Code Civ. Proc. § 413.10(c) ............................................................................4

Cal. Code Civ. Proc. § 416.10(b) ............................................................................4

Cal. Corp. Code, § 2110 ..........................................................................................4

Cal. Gov. Code §6806 ..............................................................................................9

Cal. Gov. Code § 6808 .............................................................................................9

**OTHER AUTHORITIES**

4 C. Wright & A. Miller, Federal Practice and Procedure § 1061 (2d ed. 1987) ........................3, 7

Fed. R. Civ. P. 4 ..................................................................................................3, 7, 8

Joe Matal, *A Guide to the Legislative History of the, America Invents Act:
Part II of II*, 21 Fed. Cir. B.J. 611 (2012) ..............................................................15

**INTRODUCTION**

GREE's motion presents a mishmash of theories thrown against the wall in an effort to transport the parties' disputes out of California and into a forum with which neither party has any meaningful connection – the Eastern District of Texas. Without justification, GREE disputes service of process, subject matter jurisdiction, and the propriety of venue. And if none of that spaghetti sticks, GREE asks the Court to stay the action based on a topsy-turvy theory undermined by GREE's own actions. In reality, service was proper, and even if not, dismissal is not justified on that ground. Subject matter jurisdiction exists for Supercell's patent and contract claims. GREE's purportedly "first-filed" cases violate ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ GREE's stay argument depends on a statutory provision that would provide for a stay only "until … [GREE] files a civil action or counterclaim alleging that [Supercell] has infringed the patent…," i.e., until it filed its Texas patent infringement lawsuits against Supercell. GREE's motion should be denied on all issues.

**FACTUAL BACKGROUND**

Declaratory Judgment Plaintiff Supercell Oy is a Finnish corporation headquartered in Helsinki. Supercell has a wholly owned subsidiary, Supercell, Inc., a Delaware corporation, headquartered in San Francisco. GREE is a corporation organized under the laws of Japan, headquartered in Tokyo. GREE is affiliated with an investment fund, originally named "GREE VR Capital, LLC." Dkt. 29 ("Op. Br.") at 2; Dkt. 30-2 ¶ 3; Declaration of Geoffrey R. Miller in Support of Supercell's Opposition to Motion to Dismiss, Transfer or Stay ("Miller Opp. Decl."), Ex. A. The paperwork to change the name of that entity to GFR Fund I GP, LLC was filed on the same day that Supercell filed the complaint. Miller Opp. Decl. Ex. A

This suit arises out of GREE's aggressive global patent monetization and litigation campaign against Supercell and from GREE's violations of an ████████████████████ ████████████████████████████████████  Dkt. 19, Ex. A.  ████████████████ ████████████████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

F꜡ɴᴡɪᴄᴋ & Wᴇꜱᴛ LLP
Aᴛᴛᴏʀɴᴇʏꜱ ᴀᴛ Lᴀᴡ

1

2             *Id.* at 1.

3        To accomplish the latter objective,

4

5

6

7

8

9        Dkt. 19 ¶ 16; *Supercell Oy v. GREE, Inc.*,

10 PGR2018-00071, Paper No. 7 (P.T.A.B. Jan. 23, 2019).

11

12

13

14

15

16

17        Just before 10 p.m. Pacific Standard Time on

18 GREE commenced three lawsuits alleging patent infringement in the Eastern District of Texas.

19 Dkt. 19 at ¶ 5; Dkt. Nos. 7-18, 7-19, and 7-20; Dkt. 19 at ¶ 19 & Exs. J, K, and L (showing the

20 Texas complaints were "filed on 2/27/2019" and entered at 0:00 AM CST (10:00 PM Pacific

21 Standard Time), on February 27, 2019); Dkt. 19 at ¶¶ 6-9; Exs. B, C, and D (showing the relevant

22 dockets and their respective February 27 filing dates).

23        Supercell filed this action.  When it learned that

24 GREE had violated the agreement, Supercell amended its complaint the next day to allege, *inter*

25 *alia*, the resulting breach of contract claim.  (Dkt. 7.)  In due course, Supercell served process on

26 GREE via its investment arm, GFR Fund I GP, LLC, through its registered agent for service of

27 process in the state of California.  (Dkt. 15.)

28



## THIS ACTION WAS PROPERLY FILED, AND GREE HAS SHOWN NO BASIS FOR DISMISSAL, TRANSFER, OR STAY

## I.      SUPERCELL PROPERLY SERVED GREE.

GREE's service argument is a red herring.  Service as effected was proper, and even if it had not been, the summons and complaint could still be timely and properly made under the Hague Convention.

### A.      GREE's Investment Arm Is Its "General Manager" For The Purpose Of Service Under California Law.

GREE seeks dismissal of the case because, it alleges, Supercell needed to serve the complaint upon GREE via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("the Hague Convention.")  Although Supercell could have served GREE overseas using this procedure, it did not have to do so.  Instead, Supercell properly served GREE under California law by delivering a copy of the summons and complaint to its affiliate investment fund, GFR Fund I.

Rule 4, governing service of process, is intended "to provide maximum freedom and flexibility in the procedures for giving all defendants . . . notice of commencement of the action and to eliminate unnecessary technicality in connection with service of process."  *Elec. Specialty Co. v. Rd. & Ranch Supply, Inc.*, 967 F.2d 309, 314 (9th Cir. 1992) (quoting 4 C. Wright & A. Miller, Federal Practice and Procedure § 1061, at 216 (2d ed. 1987)).  "So long as a party receives sufficient notice of the complaint, Rule 4 is to be liberally construed to uphold service."  *Travelers Cas. and Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quotations omitted).

Defendant GREE is a foreign corporation outside "any judicial district of the United States," and therefore must be served in the manner prescribed for serving an individual, including by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(h), 4(e)(1).  While service on a foreign corporation may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ," Fed. R. Civ. P. 4(f)(1), service through the Hague Convention is

FENWICK & WEST LLP
ATTORNEYS AT LAW

only required "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). Because Supercell properly served GREE under the law of the forum state, California, and California does not require service of process "outside the United States" on GREE, the Hague Convention does not apply. *See Khachatryan v. Toyota Motor Sales, U.S.A*, 578 F. Supp. 2d 1224, 1228 (C.D. Cal. 2008) (quoting Cal. Code Civ. Proc. § 413.10(c)). Rather, Supercell served GREE in California without requiring "transmittal of documents abroad." *Volkswagenwerk*, 486 U.S. at 700; *Khachatryan*, F. Supp. 2d at 1228.

California law permits service upon "a corporation by delivering a copy of the summons and the complaint . . . to . . . a general manager" of the corporation and upon a foreign corporation by delivering the case-initiating documents to "any officer of the corporation or its general manager in this state." Cal. Code Civ. Proc. § 416.10(b); Cal. Corp. Code. § 2110. "The term 'general manager' is not defined in either statute." *United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016).

The key requirement of a "general manager" for the purpose of service on a foreign corporation is be "any agent of the corporation of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." *Falco v. Nissan North America*, 987 F. Supp. 2d 1071, 1074 (C.D. Cal 2013) (quotations omitted). A local subsidiary of a foreign parent corporation can be its "general manager in this State" even if the subsidiary has no control of managerial responsibility over the foreign parent corporation's activities. *Yamaha Motor Co. v. Sup. Ct.*, 94 Cal. Rptr. 3d 494, 500-501 (Cal. Ct. App. 2009).

As GREE notes, the expansive understanding of a "general manager" for purposes of service dates back decades, since the California Supreme Court held that a nonexclusive California sales representative was the out-of-state manufacturer's "general manager" for service of process. Op. Br. at 4; *Cosper v. Smith & Wesson Arms*, 53 Cal. 2d 77, 83-84 (Cal. 1959). In its desire to distance itself from the controlling law, GREE substitutes the facts of the cases applying *Cosper* for the rule of law that they apply. Op. Br. at 4.

In *Cosper*, the "general manager," Lookabaugh, was merely a non-exclusive sales agent

FENWICK & WEST LLP
ATTORNEYS AT LAW

over which Smith and Wesson exercised no control and in which it held no financial interest. *Cosper*, 53 Cal. 2d at 80.  Lookabaugh received "no help or assistance" from Smith and Wesson, Inc., "except such advertising material as is furnished by Smith and Wesson, Inc., to the general jobbing trade throughout the world." *Id.* at 80-81.

GREE contends the essence of *Cosper* is that an opportunity for contact with customers and a channel for the foreign corporation's business were required to find that Lookabaugh was the general manager of Smith and Wesson.  Op. Br. at 4.  This is incorrect.  Rather, those facts showed that the contact between the alleged "general manager" and the foreign corporation was "of sufficient character and rank to make it certain that Smith & Wesson would be apprised of the service of process."  *Cosper*, 53 Cal. 2d at 83 (quotations omitted).

Later California decisions applying *Cosper* agree.  For example, in *Overland Machined Products v. Swingline, Inc.*, 36 Cal. Rptr. 330 (Cal. Ct. App. 1964), the Court found that a California corporation affiliated with two New York companies was the general manager of those foreign corporations.  Even though "the president of the California corporation . . . was not an officer, agent, or employee of those [New York] firms, his position . . . was such as to *most likely insure notice to the New York firms* of any notice or process served upon him affecting their interests." *Khachatryan*, 578 F. Supp. 2d at 1227 (quoting *Overland Machine Products*, 36 Cal. Rptr. at 331) (emphasis added).

GREE repeats its error when analyzing the federal cases applying *Cosper*, conflating the facts that support finding that an entity will apprise the foreign corporation of the lawsuit with a requirement that those facts must be present.  The authority is clear:  The key trait required of a "general manager" is that the foreign entity be likely to find out it has been served with process. *Thomas v. Takeda Pharms. United States*, 2017 WL 2214956, *5 (E.D. Cal. May 18, 2017). GREE's analysis of *Thomas* misses the mark in the same manner.  There, the court found that the plaintiff had not properly effected service because it could not show "that actual notice to [defendant] of service of the complaint would be likely." *Id.*

Here, there is no such concern.  GREE's business concerns include investments of the kind that GFR makes. *See* Miller Opp. Decl. Ex. B (listing GREE's businesses as games, live

entertainment, media, advertising, and investment). GFR is GREE's beachhead for access to investment opportunities in Northern California, and has been described as having "deep ties" to GREE. *See* Miller Opp. Decl. Ex. C at 2 (describing GFR Fund: "[w]e are currently investing in North American start-ups . . . "); Ex. D ("GFR Fund has deep ties to GREE, a Japanese mobile gaming giant, where [the Managing Partner] spent many years.")

GFR and GREE also share key personnel, including officers. GFR Fund has two managing partners. One, Masaki Fujimoto, is the Chief Technology Officer and Senior Vice President of GREE. *See* Miller Opp. Decl. Ex. E at 3; Ex. F at 1. The other, Teppei Tsutui, is the former director of investment for a GREE subsidiary. *See* Miller Opp. Decl. Ex. E at 3; Ex. G.

It is no logical leap to suggest that the managing partner of an investment fund started by GREE who is also an officer of GREE would be likely to notify GREE of pending litigation when served with process directed to GREE. *See Yamaha*, 94 Cal. Rptr. 3d at 501 (concluding that service was sufficient because "probable contact between the domestic representative and the foreign corporation leading to actual notification is far more present here than in *Cosper*").

GFR Fund and GREE are intertwined—they share senior management and work as one to invest in North American start-ups as part of GREE's investment business. Because they are so closely connected, GFR Fund is GREE's general manager for effectuating service in California, and the method of service was proper.

### B.   GREE Is Fully On Notice Of The Claims Against It, And Supercell's Service Of A Redacted Complaint Does Not Merit Dismissal.

Although Supercell served GREE with a partially redacted complaint, it still received a proper summons through the service on GFR Fund. And GREE's counsel of record received the full, unredacted complaint no later than the next day. Dkt. 19, Ex. F. There is no prejudice to GREE, and dismissal of the case is unwarranted. Even if the Court finds that service was incomplete, it should quash service and grant leave to Supercell to re-serve the complaint via the Hague Convention.[1]

---

[1] In fact, as a precaution, Supercell also initiated service via the Hague Convention prior to the filing of GREE's motion. The papers currently are in the hands of the Japanese central authority. Miller Opp. Decl. ¶ 9. There is no set time limit to this method of service. Fed. R. Civ. P. 4(m).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Rule 4, governing service of process, is intended "to provide maximum freedom and flexibility in the procedures for giving all defendants . . . notice of commencement of the action and to eliminate unnecessary technicality in connection with service of process." *Elec. Specialty Co.* 967 F.2d at 314 (quoting 4 C. Wright & A. Miller, Federal Practice and Procedure § 1061, at 216 (2d ed. 1987)). "So long as a party receives sufficient notice of the complaint, Rule 4 is to be 'liberally construed' to uphold service." *Travelers Cas. and Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994)). Here, there is no real dispute that GREE received notice of commencement of the action. GREE received process through its affiliate GFR Fund, and GREE's counsel, the same counsel who handled the prior dispute between the parties in this jurisdiction and who have appeared here, received the unredacted courtesy copy of the complaint before GREE was served.

In keeping with the pragmatic view of service reflected in Rule 4, Courts have found that even "unorthodox" service, such as service of the complaint and summons at different times, can be sufficient. *Zabner-Willis v. Gladden*, No. CIVA 2:04CV229 KSMTP, 2007 WL 184663, at *3 (S.D. Miss. Jan. 19, 2007). GREE points to *Cherry v. Spencer*, for the accepted proposition that Rule 4 requires service of the full complaint "because a defendant is required to admit or deny each allegation." But the plaintiff in *Cherry* sent only the first page of the complaint, did not include the summons, and purported to serve all defendants via an unapproved method (by fax). 249 F.R.D. 226, 229 (E.D.N.C. 2008). Even so, the action was only dismissed (without prejudice) because, after more than 120 days had passed since the plaintiff filed his complaint, the plaintiff had not served any defendant, the plaintiff did not respond to defendants' motion to dismiss, and all attempts to contact the plaintiff had failed. *Id.* at 228. In contrast, Supercell served GREE with the summons and a redacted complaint, and GREE and its counsel were already aware of every allegation in the complaint. There is no prejudice to GREE, even if the manner of service was not ideal.

If this Court finds that service fails to meet the standard of Rule 4, where effective service is possible and there is no unfair prejudice to the defendant, quashing service and granting leave to serve is the appropriate course. *Verde Media v. Levi*, No. 14-cv-00891, 2014 WL 3372081, at

FENWICK & WEST LLP
ATTORNEYS AT LAW

*2 (N.D. Cal. July 9, 2014).  Although courts have broad discretion to dismiss the action or to retain the case and quash service, "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained."  *Moletech Global H.K. v. Pojery Trading*, No. C 09-00027 SBA, 2009 WL 506873, at *3 (N.D. Cal. Feb 27, 2009).  In *Boustred v. Cnty. of Santa Cruz*, a case somewhat reminiscent of the facts here, the plaintiff served defendant through a combination of paper and electronic documents, rather than a complete service package. No. C-08-00546 RMW, 2008 WL 2156996, at *2 (N.D. Cal. May 20, 2008).  The *Boustred* court held that despite ineffective service, "the remedy of dismissal of plaintiffs' claims requested by [defendant] is not an appropriate one as it appears that service can be corrected."  *Id.*  The proper remedy was to "quash service to defendant" give plaintiff time "to effect service properly."  *Id.*

Even if GREE's view of the existing service were correct, service may unquestionably yet be effected in this case.  Supercell maintains that GREE is on notice of the claims against it and received the summons through GFR Fund, satisfying the requirements of Rule 4.  But if the Court concludes otherwise, there is no prejudice to permitting Supercell to re-serve the summons and complaint.  The case is only days outside the 90-day window prescribed by Rule 4(m) for service in the United States, and no prejudice to GREE would result.  If the Court finds that service of the redacted complaint is the issue, Supercell can re-serve GREE in California.  If this Court finds that GFR is not a general manager under California law, Supercell can serve GREE through the Hague Convention, a process that is already in progress.  *Supra* n. 1.  GREE's motion to dismiss for improper service should be denied.

## II.   THIS ACTION IS THE ONLY PROPERLY FILED CASE, AND THE COURT SHOULD RETAIN ITS JURISDICTION OVER THE SUIT

GREE's dismissal-or-transfer request based on the "first-to-file" rule should be denied. This is the only properly-filed action.  The Court should not apply the first-to-file rule in favor of transferring the case to Texas because:  1) GREE's Texas lawsuits are ███████████████ ████████████████████████████████████ and 2) the "first-to-file" rule should not be applied in a race-to-the-courthouse situation, particularly where California is the more

FENWICK & WEST LLP
ATTORNEYS AT LAW

appropriate forum for the dispute.[2]

"Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). "[E]xceptions may be made if justified by considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Futurewei Technologies, Inc. v. Acacia Research Corp.*, 737 F. 3d 704, 708 (Fed. Cir. 2013) (quotations omitted).  As courts in this district have observed: "'where the two actions [are] filed almost simultaneously,' '[i]nstead of . . . automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a).'" *Genentech, Inc. v. GlaxoSmithKline LLC*, No. 5:10-CV-04255-JF, 2010 WL 4923954, at *2 (N.D. Cal. Dec. 1, 2010) (citing *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)).  GREE's lawsuits should be given no first-to-file weight.

GREE's Texas lawsuits were commenced during ████████████████████ ████████████████████████████████████████ GREE's breach weighs in favor of treating Supercell's case, not GREE's, as the first-filed.  When it commenced the Texas lawsuits on February 27, 2019, GREE ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████, apparently to select a chosen forum to which neither party has any connection.

████████████████████████████████████ ████████████████████████████ Dkt. 19, Ex. A, Section 8.5.  California law specifies that the time zone to be applied under California law is "that of the fifth zone designated by federal law as Pacific standard time," and that a day is from midnight one day to midnight the next.  Cal. Gov. Code §§ 6808, 6806.  As a result, any suit filed before midnight Pacific Standard Time, when the calendar ticked over from February 27 to February 28, ███████████████ ████████████████████  *See Miracle Auto Center v. Superior Court*, 68 Cal. App. 4th 818,

---

[2] Supercell intends to file motions to transfer the Texas lawsuits to this district.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  821-22 (Cal. Ct. App. 1998) (applying California law to a contract to hold that "the hour prescribed

2  for the performance of any act shall be the time then in effect").

3       Even if ███████████████ did not mandate Pacific standard time, GREE still

4  commenced the actions on February 27, as shown by the Texas court's date stamp on the

5  complaints.  In its opposition to Supercell's motion for a temporary restraining order, Dkt. 26,

6  GREE's counsel relied on E.D. Tex. Local Civil Rule 5(a)(3)(B) to argue that its February 27

7  filing date really meant February 28 because that was the date the case was "entered" by that

8  Court.  *Id.* at 4-5.  This argument fails for two reasons.  First, ████████████████████

9  █████████████████████████████████████████████████████████████

10  ██████████████████  So the relevant act is GREE's filing of the complaints, not the Texas

11  court "entering" them.  Second, the local rules of the Eastern District of Texas do not govern

12  ████████████████████████████  E.D. Tex. Local Civil Rule 5(a)(3)(B) is thus

13  irrelevant to determining whether a party breached the Agreement.

14       GREE's gamesmanship should not be rewarded.  This Court recently addressed a similar

15  situation and issued an injunction in response, a decision affirmed by the Federal Circuit.

16  *Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-cv-07088-EDL, 2018 WL 1475289 (N.D. Cal

17  March 26, 2018); *aff'd*, No. 2018-1724, 2019 WL 1758481 (Fed. Cir. Apr. 18, 2019).  In

18  *Dodocase*, plaintiff Dodocase sought an order requiring defendants MerchSource and ThreeSixty

19  Brands to withdraw three PTAB petitions challenging Dodocase patents because the PTAB

20  actions were filed in violation of "no-challenge" and "forum selection" clauses of a Master

21  License Agreement between the parties.  *See Dodocase VR, Inc.* at *4.  Under the forum selection

22  clause, the parties agreed that disputes between the parties shall be litigated before the courts in

23  San Francisco or Orange County, California.  *See id.* at *5.  Finding the forum selection clause

24  mandatory and the courts of San Francisco and Orange Counties the only fora for litigating

25  disputes, the court in *Dodocase* found that acquiescing to defendants' disregard for the forum

26  selection clause "essentially ask[s] this Court to permit their belated attempt at forum shopping."

27  *Id.* at *10.

28       Here, as in *Dodocase*, the parties ████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   ████████████████████████████████████████████████████████████████

2   ████████████████████████████████████████████  But as in *Dodocase*,

3   GREE seeks to ignore a contractual provision and select its forum of choice.  The Court should

4   disallow this forum shopping too.  ██████████████████  was a bargained-for contractual right.

5   The bargained-for ██████████████████  would be "reduced to a nullity" if GREE could

6   dismiss this case as "later-filed."  *General Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*, 651

7   F.3d 1355, 1364 (Fed. Cir. 2011) (affirming grant of temporary restraining order and preliminary

8   injunction to enforce forum selection clause in settlement agreement from prior lawsuit).

9         Moreover, the existence of a forum-selection clause is a factor for the transfer analysis "that

10  should control except in unusual cases."  *Atl. Marine Constr. Co. v. U. S. Dist. Court*, 571 U.S. 49,

11  64 (2013).  Here, the parties agreed to ████████████████████████████████████

12  ████████████████████████████████████████████████████████████  Dkt. 19,

13  Ex. A at Section 8.5.  Supercell's complaint alleges and seeks to remedy two such breaches.  Thus,

14  GREE's motion to transfer based on the first-filed rule should be denied—to grant it would reward

15  GREE for flouting its bargained-for commitments.

16        This factual background renders GREE authority in support of dismissal or transfer

17  inapposite.  No case cited by GREE treats a lawsuit filed in violation of a ██████████████

18  ████████████████  as "first to file."  For example, GREE relies on *Meru Networks, Inc. v.*

19  *Extricom Ltd.*, in which this Court dismissed a later-filed action in favor of one filed "hours

20  beforehand, following the expiration of a litigation standstill agreement."  Op. Br. at 7; Case No.

21  C-10-02021-RMW, 2010 WL 3464315, at *1 (N.D. Cal. Aug. 31, 2010).  GREE's analytical

22  dodge is in the parenthetical phrase it added to the discussion of *Meru Networks*:  "following the

23  expiration of a litigation standstill agreement ████████████████."  *Id.* (emphasis added).

24  ████████████  the first-filer in *Meru Networks* commenced its action "upon *expiration* of a

25  standstill agreement," not before that agreement expired.  Preventing GREE from benefitting

26  from its disregard for prior agreements is exactly why the first-to-file rule is not applied

27  mechanically.  *Genentech, Inc. v. Eli Lilly and Co.*, 998 F. 2d 931, 937-938 ("Exceptions,

28  however, are not rare, and are made when justice or expediency requires…").  This Court should

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   disregard GREE's false start in its race to the courthouse and keep the Supercell's claims in

2   Northern California made in keeping with the parties' ███████████

**III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER SUPERCELL'S
3         DECLARATORY JUDGMENT CLAIMS**

4           GREE relies on outdated case law when it claims that Supercell lacks subject matter

5   jurisdiction for its declaratory judgment claims on the '843 and '273 patents, even though it

6   sought to enforce their parent foreign patents against Supercell.  Op. Br. at 10.  GREE contends

7   its prior assertion of the foreign parents of the '843 and '273 patents cannot establish an "actual

8   controversy" sufficient to maintain declaratory judgment jurisdiction.  *Id.*  GREE's authority in

9   support of this contention was decided more than 20 years before the Supreme Court lowered the

10  bar for establishing declaratory judgment jurisdiction in patent cases in *MedImmune, Inc. v.*

11  *Genentech, Inc.*, 549 U.S. 118 (2007).  *See Micron Tech., Inc.*, 518 F.3d at 902 ("[T]he now more

12  lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction

13  in patent cases."); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382-83

14  (Fed. Cir. 2007) (declining to hold that even a statement that defendant would not sue plaintiff

15  eliminates a justiciable controversy where prior conduct "shows a preparedness and willingness

16  to enforce its patent rights").  Even before *MedImmune*, "[c]ourts [were] divided on whether suit

17  or threat of suit in a foreign forum on a corresponding foreign patent is sufficient to satisfy the

18  reasonable apprehension requirement." *Teva Pharmaceuticals USA, Inc. v. Abbott Laboratories*,

19  301 F. Supp. 2d 819, 822 (N.D. Ill. 2004).  After reviewing authority, the *Teva* court ultimately

20  concluded that "the better view is that foreign litigation, while not dispositive of a reasonable

21  apprehension of suit in the United States, is one factor to be considered in the analysis."  *Id.*

22          Further, GREE's prior conduct emphasizes the concrete nature of the controversy.  GREE

23  has aggressively enforced its patent rights against Supercell, a pattern it continued when it filed

24  the Texas suits against Supercell.  A history of litigation "can certainly a factor to be considered"

25  in evaluating declaratory judgment jurisdiction.  *Hewlett-Packard Co. v. Acceleron LLC*, 587

26  F.3d 1358, 1364 n.1 (Fed. Cir. 2009) (citing *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d

27  1329, 1341 (Fed.Cir.2008) ("Prior litigious conduct is one circumstance to be considered in

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

assessing whether the totality of circumstances creates an actual controversy.").

GREE suggests that because it does not currently subjectively believe Supercell to infringe and because it has not yet sued for infringement, there can be no real controversy regardless of the history between the parties.  Of course, if GREE believes that Supercell does not infringe its patents, it could say so.  Or, it could offer Supercell a covenant not to sue on those patents and definitively deprive the Court of subject matter jurisdiction.  Instead, it offers a carefully worded assertion that "at present, GREE is not aware of any facts to suggest infringement of the specific claims in those two patents." Op. Br. at 10.  But "it is irrelevant whether [GREE] had conducted an adequate investigation or whether it subjectively believed [Supercell] was infringing" when Supercell filed its complaint, because "it is the objective words and actions of the patentee that are controlling." *Hewlett-Packard Co*, 587 F.3d at 1363.  That is, "conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." *Id.*  Indeed, even a "direct and unequivocal statement that '[the patentee] has absolutely no plan whatsoever to sue [plaintiff]'" cannot divest the Court of jurisdiction created by a patent owner's "preparedness and willingness to enforce its patent rights." *See, e.g., SanDisk Corp.*, 480 F.3d at 1382-83.

## IV.    THERE IS NO BASIS TO DISMISS THE BREACH OF CONTRACT CLAIMS

### A.    This Court Has Supplemental Jurisdiction Over The Contract Claims.

GREE's motion to dismiss the contract claims for lack of subject matter jurisdiction should also fail.  In its complaint, Supercell quoted 28 U.S.C. § 1367 (supplemental jurisdiction), in alleging that "subject matter jurisdiction is proper over the breach of contract claims as the breach of contract arises from the same case or controversy" as Supercell's other patent-related claims.  Dkt. 7 ¶ 13.  The only basis GREE alleges for dismissing these claims under a supplemental jurisdiction theory is that GREE would like Supercell's other claims dismissed.  If all federal claims were dismissed, this Court would have the discretion to dismiss the breach of contract claims.  But because GREE cannot show that Supercell's patent-related claims should be

1    dismissed, GREE's motion should fail as to the contract claims as well.[3]

2         **B.    Supercell Adequately Pled Harm From GREE'S Breach of Contract.**

3         As explained above, GREE breached the Agreement ████████████████

4    ████████████████████████████████████████████████████ Supercell "has a right to

5    enforce that provision and recover damages for its breach."  *See Laboratory Corp. of America,*

6    *Inc. v. Upstate Testing Lab., Inc.*, 967 F. Supp. 295, 299 (N.D. Ill. 1997) (citing *Omron*

7    *Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 604 (7th Cir.1994) (stating that damages

8    could have been sought for a breach of forum selection clause)).  Indeed, both GREE and

9    Supercell acknowledged that breach of the Agreement may ████████████████████

10   ████████████   Dkt. 19, Ex. A, at Section 8.6.  And as the *Dodocase* court found, breaches of

11   bargained-for rights related to the manner, timing, and location of litigation can cause irreparable

12   harm.  *Dodocase VR Inc.*, 2018 WL 1475289, at *11.

13   **V.    THE STAY PROVISIONS OF THE AIA ARE INTENDED TO PREVENT, NOT
         ENABLE, FORUM-SHOPPING, AND NO STAY IS WARRANTED**

14

15        As an alternative to dismissal, GREE asserts an illogical argument for staying this action

16   pursuant to 35 U.S.C. § 325(a)(2).  Op. Br. at 14.  This provision provides that "a civil action

17   challenging the validity of a claim of the patent" filed by a petitioner after it files "a petition for

18   post-grant review of the patent, that civil action shall be automatically stayed until (A) the patent

19   owner moves the court to lift the stay; (B) the patent owner files a civil action or counterclaim

20   alleging that the petitioner or real party in interest has infringed the patent; or (C) the petitioner or

21   real party in interest moves the court to dismiss the civil action."  35 U.S.C. § 325(a)(2).

22   Although Supercell filed post-grant review petitions on the '594, '583, and '659 patents before

23   filing its declaratory judgment counterclaims of invalidity here, any automatic stay that resulted is

24   nullified by the fact that GREE has filed, albeit improperly, lawsuits in Texas ***making just the***

25   ***infringement allegations that negate any stay***.

26   ────────────────
     [3] To the extent that this Court finds supplemental jurisdiction insufficient, Supercell asks for leave
27   to amend to allege diversity jurisdiction, with the amount in controversy determined by the value
     to Supercell of the injunctive relief it seeks.  *See Twitter, Inc. v. Skootle Corp.*, No. C 12-1721 SI,
28   2012 WL 2375486, at *3 (N.D. Cal. June 22, 2012) ("[w]hen the plaintiff seeks equitable relief,
     the value of the injunction to the plaintiff may meet the statutory minimum").

FENWICK & WEST LLP
ATTORNEYS AT LAW

Faced with this dispositive fact, GREE essentially argues that exception (B) can never apply if the patent owner files a civil action for infringement before the petitioner files a claim for invalidity.  The Court should reject this strained interpretation because it is counter to the plain logic of the provision and would frustrate the purpose of the statute.  This conclusion does not require extensive analysis.  A state that persists "until" an event occurs should not persist if that event occurred first.  To illustrate, imagine you and a friend agreed to meet at a coffee shop before going to a meeting, and you tell your friend to wait at the coffee shop until you arrive. Neither party would expect your friend to stay at the coffee shop if you arrived first, even though the friend agreed to wait "until" you arrived.  The same logic applies here.  If a petitioner is sued before it files its invalidity action, the state of affairs that would undo the stay is already in effect.

The legislative history of Section 325(a)(2) supports this interpretation.  These provisions intended to prevent forum-shopping by patent owners and protect petitioners.  "[T]he purpose of the final bill's provision allowing a declaratory-judgment action to be filed (but stayed pending countersuit) on or after the day that the review petition is filed 'is to allow the accused infringer to file the first [civil] action and thus be presumptively entitled to his choice of venue' if the patent owner later countersues in another district."  Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 611 (2012) (citing 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl)).

GREE's interpretation of the statute would permit patent owners to indefinitely stay invalidity cases.  Because GREE's infringement claims are already asserted, it has no need to file them again, thereby never meeting its interpretation of exception (B) and blocking Supercell's invalidity claim.  This is contrary to a plain understanding of the statutory language and the purpose of the statute.  No stay should be entered here.

## CONCLUSION

Supercell respectfully requests that the Court refrain from permitting GREE to benefit from breaching its agreement with Supercell.  It should deny GREE's motion to dismiss or transfer in favor of GREE's improperly filed claims, and should deny GREE's motion to stay because it is contrary to the purpose of the statute on which GREE relies.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Dated:  June 17, 2019                    FENWICK & WEST LLP

2

3                                            By:  /s/ Michael J. Sacksteder
                                                   Michael J. Sacksteder
4                                                  Attorneys for Plaintiff
                                                   Supercell Oy
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28